IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | | |
|---|---|---|
| VERONICA SPATH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-6128-SJ-DGK |
| | ) | |
| STANDARD INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ATTORNEYS' FEES

Plaintiff Veronica Spath ("Spath") participated in a disability plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. After the plan's administrator, Defendant Standard Insurance Company ("Standard"), closed a claim she filed, Spath sued to recover benefits.

Now before the Court is Standard's motion for summary judgment (Doc. 6). Because no reasonable jury could find that Standard was unreasonable to conclude that Spath had not exhausted her administrative remedies, summary judgment is granted in Standard's favor. Further, the Court grants Standard's request for attorneys' fees and costs, and orders Spath to pay $500.00 to Standard. The motion is GRANTED.

**Background**

Through her employer, Farmland Foods, Inc., Spath obtained a long-term disability plan administered by Standard. The plan reserved Standard the authority to determine whether Spath was entitled to any benefits.

After sustaining work-related injuries, Spath submitted a claim for benefits. Standard initially granted her benefits.

On September 17, 2014, Standard informed Spath that upon further review of her file it had changed its mind. Standard told her that it was terminating her benefits immediately and instructed, "If you want us to review this claim and this decision you must send us a written request within 180 days after you receive this letter." (Doc. 6-1 at 43); *see* 29 C.F.R. § 2560.503-1(h)(3)(i) (entitling ERISA plan participants to this 180-day window).

On November 20, 2014, Spath's attorney mailed Standard a letter:

> My client disputes any denial of benefits. Because she is poor, she does not have the funds for medical treatment. The day in life surveillance does not demonstrate as you claim. Please provide the medical opinion you contend from watching the surveillance was used for your standard position to deny benefits.
>
> Resume benefits immediately in order to avoid bad faith and vexatious refusal litigation.
>
> If you have any questions, please let me know.

(Doc. 6-1 at 45).

Four days later, Standard replied,

> [N]o further [long-term disability] benefits will be paid beyond the date of our letter dated September 17, 2014, due to the reasons detailed above. As you have not requested a review of the decision to close Ms. Spath's claim one will not be done at this time. Should you wish to request a review in the future[, certain additional information must be provided.]

(*Id.* at 50). Standard purported to enclose the requested medical opinions.

Spath never responded or communicated in any way back to Standard. Standard, concluding that she had never requested review within 180 days after it sent its initial letter, has refused to reconsider its decision. Spath then sued Standard to recover unpaid benefits, claiming it had arbitrarily and capriciously closed her claim.

**Standard**

A moving party is entitled to summary judgment on a claim if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court makes this determination by viewing the facts in the light most favorable to the nonmoving party. *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1347 (2015).

**Discussion**

Standard seeks two forms of relief: summary judgment on all ERISA claims, and an award of attorneys' fees and costs.

**I. Because no reasonable jury could find that Standard abused its discretion in concluding Spath failed to appeal its decision, Standard is entitled to summary judgment.**

Standard moves for summary judgment on the ground that Spath never used its internal review process.

An ERISA employee-benefit plan must provide participants with adequate notice of claim denials and "a reasonable opportunity" for "a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2).[1] A participant seeking to recover benefits due under the terms of the plan must exhaust these administrative procedures. *Reindl v. Hartford Life & Acc. Ins. Co.*, 705 F.3d 784, 787 (8th Cir. 2013). Not until a participant has done so may she bring a civil action. *Id.*; *see* 29 U.S.C. § 1332(a)(1)(B).

---

[1] Although Spath's complaint does not reference ERISA, each party's briefs presume that her complaint raises only ERISA claims. For example, in the main part of her responsive suggestions, Spath cites only ERISA cases.

Where the plan administrator has the discretion to determine benefits eligibility and concludes that the participant failed to exhaust her administrative remedies, the district court reviews that decision for an abuse of discretion. *Reindl*, 705 F.3d at 787. This standard asks whether a reasonable person *could* have reached the administrator's decision. *Ratliff v. Jefferson Pilot Fin. Ins. Co.*, 489 F.3d 343, 346 (8th Cir. 2007). "A reasonable decision is one supported by substantial evidence, which is more than a scintilla but less than a preponderance." *Id.* Thus, the issue is whether Standard's determination that Spath never requested review is "reasonable, even if a different, reasonable interpretation could have been made." *Reindl*, 705 F.3d at 788 (internal quotation marks omitted).

Standard's determination that Spath never submitted a written appeal was reasonable. Standard used its discretion under the policy to deny Spath further benefits. It warned her on September 17, 2014, that if she wanted an internal review of its adverse determination, she had to submit a written appeal within 180 days. This meant that she had until March 16, 2015, to submit a written appeal.

The only communication Spath had with Standard during this timeframe was her letter of November 21, 2014. This letter generally "dispute[d]" the denial of benefits. It did not contain the words "appeal" or "review." It requested medical opinions, which a reasonable mind could interpret to mean that Spath was assessing the strength of her case, and not necessarily appealing the decision yet. *See id.* (finding that a claimant's letter requesting "a copy of any and all medical records you may have in your file" did not evince intent to presently file an appeal).

Further, Standard warned Spath that it did not consider her November 21 letter to be a request for review: "As you have not requested a review of the decision to close Ms. Spath's claim one will not be done at this time." It said so four days after Spath sent her letter—giving

4
Case 5:15-cv-06128-DGK   Document 25   Filed 02/29/16   Page 4 of 8

her more than three months to then timely submit an explicit request. Yet Spath never responded, sent a new appeal request, or otherwise clarified to Standard that she in fact intended her November 21 letter to be a request for review. Although a plan administrator viewing this evidence could have concluded otherwise, and even though the evidence here is viewed most favorably toward Spath, there is no genuine dispute that Standard made a reasonable determination that Spath never appealed its adverse benefits determination.

Therefore, Standard did not abuse its discretion in concluding Spath never exhausted its internal review process. *See Ratliff*, 489 F.3d at 346. Because she never exhausted her administrative remedies, her ERISA claims are deficient as a matter of law. *See Reindl*, 705 F.3d at 787. For this reason, the Court rejects Spath's plea to consider the merits of Standard's denial of benefits. The Court grants summary judgment to Standard on all claims. *See* Fed. R. Civ. P. 56(a).

**II. Spath must pay Standard $500 for not dismissing her lawsuit, an amount appropriate under the totality of the circumstances.**

Next, Standard asks for $1,000 of attorneys' fees and costs associated with bringing this motion.

In civil ERISA actions, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Fees may be awarded if the fees claimant shows "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254 (2010). This standard is met "if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquiry into the question whether a particular party's success was substantial or occurred on a central issue." *Id.* at 255 (alteration and quotation marks omitted). The Court finds that Standard achieved more than "some degree of success on the merits": the Court awarded it judgment on all claims. *See id.*

Because Standard showed the minimal degree of success, the Court exercises its fee-award discretion with the guidance of five non-exclusive factors. *See Martin v. Ark. Blue Cross & Blue Shield*, 299 F.3d 966, 969, 972 (8th Cir. 2002) (en banc). Those considerations are: (1) Spath's degree of bad faith; (2) Spath's ability to pay; (3) whether a fee award would have future deterrent effect under similar circumstances; (4) whether the lawsuit endeavored to resolve a significant legal question; and (5) the relative merits of the parties' positions. *See id.* at 969 n.4.

First, the Court does not find that Spath acted in bad faith. Standard avers that two weeks before filing this motion, it explained to Spath why her position was frivolous and warned her that it would ask for fees and costs if she did not dismiss her lawsuit. One way to interpret Spath's letter could be as a request for appeal. Granted, Spath did not vigorously argue this position; she asserted it in conclusory fashion. But whatever deficiencies her opposing suggestions may have, her position is not so frivolous that it reflects bad faith. This factor weighs against a fee award.[2]

Second, Spath does not have the ability to pay $1,000. Spath swears in an affidavit that she is disabled by multiple severe impairments and lives on a limited income. This factor weighs strongly against a fee award.

Third, a fee award would have some positive deterrent effect. Spath's legal *theory* had just enough support to make it a plausible interpretation. However, she did not prosecute that theory through a cogent *argument*. Had Spath stopped to consider and engage Standard's arguments and cases, the Court suspects she may have realized her low likelihood of success. By

---

[2] For this reason, the Court denies as moot Spath's request to exclude this evidence under Federal Rule of Evidence 408 (Doc. 15).

6

Case 5:15-cv-06128-DGK   Document 25   Filed 02/29/16   Page 6 of 8

awarding some fee, a plan participant in a future case is incentivized to undertake such an investigation. This factor weighs in favor of a fee award.

Fourth, this lawsuit does not involve any significant question about ERISA. The Court needed only well-established cases to resolve the summary judgment motion; as Standard puts it, "the courts have so consistently affirmed the participant's obligation to exhaust administrative remedies before filing suit that it is no question at all." This factor weighs significantly in favor of a fee award. *Cf. Eisenrich v. Minneapolis Retail Meat Cutters & Food Handlers Pension Plan*, 574 F.3d 644, 651 (8th Cir. 2009) (reversing an award of attorneys' fees given "a question of first impression").

Fifth, Spath's position was relatively much weaker than Standard's. Her position had some merit, even if her execution of that position was unprofitable. Although *Reindl* comes close, the Court could find no controlling precedent squarely on point with this case. Still, given Standard's stronger legal position, this factor weighs in favor a fee award. *Cf. id.* (confronting "reasonable arguments on both sides" necessitating "a careful review of administrative rulemaking and regulatory history").

Those are the five *Martin* factors, but the Court makes two additional observations. *See Martin*, 299 F.3d at 972 (encouraging reliance on "other relevant considerations"). As a sixth point, the Court is unconvinced that Standard spent much time or energy filing this motion. Standard's successful arguments were not complex or overly factbound. The motion rested on short portions of only four documents: the plan, Standard's two letters, and Spath's one letter. No discovery appears to have taken place. On these few facts, the Court is not convinced that Standard incurred undue burdens defending this lawsuit. This factor weighs against a fee award.

7
Case 5:15-cv-06128-DGK   Document 25   Filed 02/29/16   Page 7 of 8

Seventh, Standard did warn Spath of its intent to seek attorneys' fees and costs. It gave her an opportunity to rethink this case, which she declined. This actual notice of the possibility of paying fees and costs weighs slightly in favor of a fee award.

Four of the Court's seven considerations support a fee award. The only question is how much. Given Spath's minimal financial capabilities, but also the strong likelihood that Standard's actual attorneys' fees and costs surpass $500, the Court orders her to pay Standard in the amount of $500. *See id.* at 969, 972; 29 U.S.C. § 1132(g)(1).

## Conclusion

For the above reasons, Standard's Motion for Summary Judgment (Doc. 6) is GRANTED. Judgment is entered in Standard's favor on all counts.

The Court ORDERS Spath to pay Standard $500.00 within sixty days after the date of this Order.

**IT IS SO ORDERED.**

Date:  February 29, 2016                   /s/ Greg Kays
                                            GREG KAYS, CHIEF JUDGE
                                            UNITED STATES DISTRICT COURT